Justice Souter,
with whom Justice Ginsburg joins, dissenting.
I join Justice Stevens’s dissenting opinion in this case. I add this word about the way I see its relation to Justice Breyer’s dissenting opinion in Schriro v. Summerlin, ante, p. 358, and to other cases in the line that began with Teague v. Lane, 489 U. S. 288 (1989).
In determining whether Mills v. Maryland, 486 U. S. 367 (1988), states a new rule of constitutional law for purpose of Teague's general bar to applying such rules on collateral review, the Court invokes the perspective of “ ‘all reasonable jurists,’” ante, at 413 (quoting Lambrix v. Singletary, 520 U. S. 518, 528 (1997)); see also ante, at 414-416. It acknowledges, however, that this standard is objective, so that the presence of actual disagreement among jurists and even among Members of this Court does not conclusively establish a rule’s novelty. Ante, at 416, n. 5; cf. Wright v. West, 505 U. S. 277, 304 (1992) (O’Connor, J., concurring in judgment). This objectively reasonable jurist is a cousin to the common law’s reasonable person, whose job is to impose a judicially determined standard of conduct on litigants who come before the court. Similarly, the function of Teague's reasonable-jurist standard is to distinguish those developments in this Court’s jurisprudence that state judges should have anticipated from those they could not have been expected to foresee.
In applying Teague, this Court engages in an ongoing process of defining the characteristics of a reasonable jurist, *424 by identifying arguments that reasonable jurists would or would not accept. The particular characteristic at stake here is the degree to which a reasonable jurist would avoid the risk of a certain kind of erroneous outcome in a capital case. Mills’s rule protects against essentially the same kind of error that Justice Breyer discusses in Summerlin: a death sentence that is arbitrary because it is inaccurate as a putative expression of “ ‘the conscience of the community on the ultimate question of life or death,’ ” ante, at 360 (dissenting opinion) (quoting Witherspoon v. Illinois, 391 U. S. 510, 519 (1968)). Justice Breyer has explained in his Summer-lin opinion why some new rules demanding that kind of accuracy should be applied through a Teague exception, and our longstanding espousal of accurate expression of community conscience should also inform our judgment, in any debatable case, about the newness of a rule.
As Justice Stevens says, a death sentence based upon a verdict by 11 jurors who would have relied on a given mitigating circumstance to spare a defendant’s life, and a single holdout who blocked them from doing so, would surely be an egregious failure to express the public conscience accurately. Ante, at 420-421 (dissenting opinion). The question presented by this case is ultimately whether the Court should deem reasonable, and thus immunize from collateral attack, at least at the first Teague stage, a reading of its pre-Mills precedents that accepts the risk of such errors that Maryland’s or Pennsylvania’s jury instructions and verdict form would have produced.
The Court concludes that, as compared with Eddings v. Oklahoma, 455 U. S. 104 (1982), Mills “shifted] . . . focus” from “obstructions to the sentencer’s ability to consider mitigating evidence” to the abilities of “individual jurors” to do so, and that a reasonable jurist could have drawn a distinction on this basis. Ante, at 414. This approach gives considerable weight to a reasonable jurist’s analytical capacity to pick out arguably material differences between sets of *425 facts, and relatively less to the jurist’s understanding of the substance of the principles underlying our Eighth Amendment cases that follow Furman v. Georgia, 408 U. S. 238 (1972) (per curiam). Although the Court’s view of the reasonable jurist is not inconsistent with some, of Teague’s progeny,* for the reasons given in Justice Breyer’s dissent in Summerlin, ante, at 362-365, 365-366, I am now convinced that this reading of Teague gives too much importance to the finality of capital sentences and not enough to their accuracy. I would affirm the judgment of the Court of Appeals, and respectfully dissent.

 See, e. g., O’Dell v. Netherland, 521 U. S. 151, 157-166 (1997) (holding new the rule of Simmons v. South Carolina, 512 U. S. 154 (1994), that a jury may not be misled about defendant’s parole eligibility when prosecutor argues future dangerousness); Lambrix v. Singletary, 520 U. S. 518, 527-539 (1997) (holding new the rule of Espinosa v. Florida, 505 U. S. 1079 (1992) (per curiam), that a Florida jury’s consideration of a vague aggravating factor taints a judge’s later death sentence); see also Stringer v. Black, 503 U. S. 222, 243-247 (1992) (Souter, J., dissenting) (arguing that the rule of Maynard v. Cartwright, 486 U. S. 356 (1988), that sentencer’s weighing among others of a vague aggravating factor taints a death sentence, was new).